[No. 2,498.]

## NATHAN BARBOUR *v.* LEWIS PIERCE, AND LEWIS PIERCE *v.* NATHAN BARBOUR.

RIGHT OF WAY BY LICENSE.—Where a party uses a way over land belonging to another, by agreement with the owner of the land, and the land is sold to a third party without notice of the arrangement as to the right of way, the third party is not bound by the arrangement.

IDEM.—In order to maintain a right of way, acquired by parol license, as against a purchaser from the one who gave the license, the one claiming such right of way must show a right based on prescription.

SAME, HOW RIPENED INTO PERFECT TITLE.—The use of a way which began under a parol license, may, by prescription, ripen into a perfect title; but in such case the user must have been exercised under a claim of right for the period prescribed for the Statute of Limitations.

APPEAL from the District Court of the Seventh Judicial District, Solano County.

In January, 1870, Nathan Barbour commenced an action to enjoin Lewis Pierce from obstructing a private road and right of way, which he claimed to have acquired by prescription over the land owned by Pierce. In March of the same year Pierce commenced an action to restrain Barbour from using the way. The two cases were tried together by the Court without a jury. In the first case the Court filed the following findings of fact and conclusions of law:

" 1. That in 1861 Alfred Alford was the owner and in possession of a tract of land in Solano County, including the strip or roadway in suit.

" 2. That in said year plaintiff attempted to secure a private road over the premises of Alford, on the east side of the creek, to his (plaintiff's) premises, in pursuance of the law of this State, and took such steps as secured the appointment of viewers by the Supervisors.

" 3. That while the viewers were upon the ground, the project of opening a road where plaintiff wanted it—to wit: on the east side of the creek—was abandoned, for the reason that neighbors interfered, and a compromise (the terms of which do not clearly appear) was effected, and a road was agreed to be opened at the point in dispute.

" 4. That on the advice and at the suggestion of one of the viewers, Alford (who was the plaintiff's father-in-law) proffered to give him a roadway on the *west* bank of the creek—to wit: the strip in suit; that plaintiff accepted the offer, and, with the consent and permission of Alford, entered into the enjoyment of said right and roadway, and built a bridge at the point where said roadway terminates at the main public road, and also some fencing along the line of the roadway, the bridge and fencing amounting in value to six hundred dollars. The said improvements were necessary to the enjoyment by plaintiff of his way, and do not appear to have been of any value to Alford, or any advantage to his property.

" 5. That plaintiff continued to use and pass over said roadway, with the knowledge of Alford, and without objection, until 1869, when Alford sold and conveyed the premises, over which said roadway ran, to defendant, Pierce, who had no notice of the verbal arrangement between Alford and the plaintiff.

" 6. That plaintiff, at various times while using said roadway, asked Alford to convey the same, and the strip of land

covered thereby, to him by deed, and that Alford always declined and refused to do so.

" 7. That defendant, Pierce, after his purchase, closed said roadway at the point where it intersected the main public road."

And as conclusions of law:

" 1. That plaintiff took his interest in said roadway, and used the same by the permission and with the consent of Alford; that his rights therein were acquired and held by license merely, and that plaintiff did not and could not acquire any rights by reason of such use, by prescription or otherwise, which he could enforce against Pierce.

" 2. That whatever rights plaintiff had in said roadway were held at the will of Alford, and terminated with his conveyance to Pierce."

In the second case the Court found similar facts, and made the following additional findings:

" 4. That after Pierce purchased the premises, he caused the said roadway to be closed up, by fencing it at the point where it terminated in the main public road; that defendant removed said fence, which was replaced by plaintiff, and removed by defendant, repeatedly and continuously up to the time of the commencement of this suit.

" 5. That there was no other agreement between Alford and Barbour than as above set forth, and that Pierce had no notice of any right claimed by Barbour in the premises, aside from the fact that said road was used by Barbour in the manner found above."

As conclusions of law, the Court finds:

" That the right of defendant to the use of said road rested in license from Landy Alford, and that said license terminated with the conveyance to plaintiff.

"That no adverse claim or right was held by Barbour in or to said roadway as against Alford, and that he acquired no rights under said license by use, prescription, or otherwise."

Judgment was rendered against Barbour in each case and he appealed therefrom.

*M. A. Wheaton* and *John Currey*, for Appellant.

By the agreement entered into between Alfred Alford and Nathan Barbour, and the acceptance by Barbour of the gift or grant from Alford of the right of way on the west bank of the creek, and his entry therein, and his continued and uninterrupted use and enjoyment of the *way* given and granted, with the knowledge and acquiescence of Alford, for over eight years, Barbour acquired an absolute right of way, in and over the land particularly described, in the complaint of Barbour. (Statute of Limitations, 2 Hit. Dig. 4348, 4349; *American Company* v. *Bradford*, 27 Cal. 366, 367; Washburne on Ease., 84, 85; *Eldredge* v. *Knott*, 1 Cowper, 214; *Campbell* v. *Smith*, 3 Halsted, 141; *Morse* v. *Copeland*, 2 Gray, 302; *Sherwood* v. *Burr*, 4 Day, 244; 1 Greenleaf's Ev. Sec. 17; Wash. on Ease. 19.)

The abandonment by Barbour of the proceeding to open a road on the east bank of the creek, and the expenses paid out by him in building a bridge, etc., was a sufficient consideration, together with his subsequent possession and use of the roadway, to support his right of way over said land, as a purchaser thereof. (*Miller* v. *Drake*, 1 Cain's R. 45; *Converse* v. *Kellogg*, 7 Barb. 590.)

As a gift, with its acceptance, and use and enjoyment of the roadway, as already mentioned, for over five years, Barbour acquired an absolute right to such way. (*Peck* v. *Brummagim*, 31 Cal. 440; *Dow* v. *Gould & Curry S. M. Co.*, 31 Cal. 652, 653.)

A parol grant or gift of the right of way or easement, followed by possession, use, and enjoyment of it, with the knowledge and consent of the grantor or donor, for over five years, invests the grantee or donee with an absolute title to the right of way or easement. (Wash. on Ease. 160, 88; *Ashley* v. *Ashley*, 4 Gray, 197; *Sumner* v. *Stevens*, 6 Metc. 337, and the cases therein cited; *Arbuckle* v. *Ward*, 29 Vt. 43, 52.)

The possession, use, and enjoyment of the easement by Barbour were adverse to Alford for over eight years. (Wash. on Ease. 88; 6 Metc. 337; 29 Vt. 43, 52; *Cannon* v. *Stockman*, 36 Cal. 538, and the cases therein cited; *Averill* v. *Wilson*, 4 Barb. 185.)

*W. H. Patterson,* for Respondent.

The Court found that Alford gave a parol license to Barbour to use the land as a roadway—during the will of Alford—for which no consideration passed.

The acceptance by Barbour of the parol license, and acting under it, prevented the Statute of Limitations from commencing to run. (38 New York, 111; *Parker* v. *Foot*, 29 Wend. 313; 14 New York, 249.) B.'s repeated application to A. for a deed precludes the idea of a grant, or holding adversely.

The license was revocable at the pleasure of his successor. (*Miller* v. *The Auburn and Syracuse R. R. Co.*, 6 Hill, 61; *Mumford* v. *Whitney*, 15 Wend. 380; *Bridges* v. *Purcell*, 1 Dev. & Batt. 492; *Noyes* v. *Chapin*, 6 Wend. 461, 464; *Thompson* v. *Gregory*, 4 Johnson, 81; *Jamison* v. *Millemun*, 3 Duer, 255; *Dexter* v. *Hazen*, 10 John. 246; 5 Barbour, 379; *Wood* v. *Leadbetter*, 13 M. & W. 838; 10 Barbour, 333.) And was revoked by the conveyance to Pierce. (6 Hill, 64; *Jackson* v. *Babcock*, 4 Johnson, 418; Hittell's Digest, 3150, Sec. 6, Stat. of Frauds.)

*Wm. S. Wells* and *W. W. Pendegast,* also for Respondent.

By the Court, RHODES, J.:

It is found that Pierce purchased the land over which the road in controversy ran, from Alfred Alford, without notice of the arrangement between Alford and Barbour respecting the road. Pierce, therefore, is not bound by the arrangement, as such; and Barbour, in order to succeed in maintaining his claim to the right of way, must show a right based upon adverse possession—or, as it is usually denominated, when applied to a way, prescription. That the right may become perfect by prescription, where the use began under a parol gift, is abundantly shown by the authorities cited by the appellant's counsel. The authorities also sustain the position that the user, which had its origin in license or permission, may by prescription ripen into a perfect title; but in such case the user must have been exercised for the period prescribed by the Statute of Limitations, *under a claim of right.* This qualification is of course applicable also where the right has its origin in a parol gift or sale.

It was found by the Court in the first case that Barbour, "with the consent and permission of Alford, entered into the enjoyment of said right and roadway;" and it is also stated, among the conclusions of law, that Barbour "took his interest in said roadway, and used the same, by the permission and with the consent of Alford; that his rights therein were acquired and held by license merely; and that plaintiff did not and could not acquire any rights, by reason of such use, by prescription or otherwise, which he could enforce against defendant, Pierce." This latter, though found among the conclusions of law, is a fact, or perhaps more than one fact. Whether Barbour took or held his interest by grant, gift, or license, are questions of fact; and whether he acquired a right by prescription is also a question of fact. That the question of adverse possession or of prescription is a question of fact there can be no doubt. It

would not assist the appellant, Barbour, to leave that find-
ing where the Judge of the Court below improperly placed
it, for the Court neither found the prescription claimed by
Barbour nor the elements going to compose it.   The user is
found; but it is not found that it was exercised under claim
of right, or adversely to Alford.

In the second case the findings are substantially the same
as in the first, in the respects we have mentioned.   Not only
has the Court not found for Barbour on the issue of prescrip-
tion, but has found against him in this as in the first case,
though here again the finding is improperly called a con-
clusion of law.   In the first case, the finding that he took
and held by license merely negatives the possibility of an
adverse holding; and in the second case the finding is
directly against the adverse claim, and right by prescription,
on the part of Barbour.   We are, therefore, of the opinion
that the appellant, Barbour, is not entitled to judgment, in
either case, on the findings.

Judgment in each case affirmed.

Mr. Chief Justice WALLACE did not express an opinion.