[Civ. No. 8179. Third Dist. Mar. 20, 1953.]

BOARD OF DIRECTORS OF THE TURLOCK IRRIGATION DISTRICT (a Corporation), Plaintiff and Appellant, v. CITY OF CERES et al., Defendants and Appellants.

W. Coburn Cook and H. E. Gleason for Plaintiff and Appellant.

Myron Moyle and Zeff & Halley for Defendants and Appellants.

SCHOTTKY, J.—The board of directors of the Turlock Irrigation District as trustees and officers of Improvement District No. 14-A, commenced an action for declaratory relief for the purpose of having it judicially determined whether the plaintiff or the defendants are responsible for the protection, maintenance and upkeep of that portion of plaintiff's irrigation pipeline which lies in and is crossed by certain public streets in the city of Ceres.

Some time prior to the year 1904 a ditch known as "Lateral A" was constructed as a farmers' or community ditch leading from a canal belonging to the Turlock Irrigation District, known as the "Ceres Main Canal," and extending southerly to and through a portion of what is now, but was not then, the city of Ceres and again in open country. This ditch was used for irrigating a large number of farms within said irrigation district. In the year 1938, the farmers using water from this ditch desired to replace it with a pipeline, whereupon they petitioned the Turlock Irrigation District for the organization of an improvement district and "Improvement District No. 14-A" was organized under the provisions of section 23600 et seq., of the Water Code of the State of California. The district so organized contained within its boundaries the land which was being irrigated from said "Lateral A" ditch and all the land within it was assessed the cost of constructing such pipeline and a pipeline was built in the location of and for the purpose of replacing said Lateral A ditch.

About the year 1911, the public began to travel over a strip of land approximately 40 feet in width, lying east of and contiguous to said Lateral A ditch, and the public continued to use said road until the year 1937, at which time the said road, known as North Central Avenue, was deeded by the owners of the land to the county of Stanislaus, the strip of land so deeded being 40 feet in width and being contiguous to

the easterly line of the strip of ground 10 feet in width which contained the irrigation pipeline hereinbefore referred to.

In the year 1948, the defendants Richard Fair and Lois Fair subdivided a portion of land within the city of Ceres, the easterly boundary of which was the easterly boundary line of said North Central Avenue. The map of the subdivision designated certain portions of the land in the tract as streets and alleys, and was submitted to, and passed upon and accepted by the planning commission and the city council of the city of Ceres. The plat showed a street named North Central Avenue along the easterly border of said tract, which contained not only the 40-foot road known by that name, which had been previously deeded to the county of Stanislaus, as aforesaid, but also contained as part of that street the 10-foot strip lying contiguous to the westerly boundary of said street, which 10-foot strip contained the irrigation pipeline hereinabove mentioned. The map also showed three streets in said tract named Darrah, Sequoia and Hollister, running easterly and westerly across said tract from said North Central Avenue to the westerly boundary of said tract. The pipeline referred to hereinbefore lies in the westerly 10 feet of North Central Avenue, as shown on said map, but lies outside of North Central Avenue, as originally used and as deeded to Stanislaus County. Traffic flowing from Darrah Street, Sequoia Street and Hollister Street into said North Central Avenue and from said North Central Avenue into said Darrah, Sequoia and Hollister Streets would naturally cross said pipeline and result in the necessity of said pipeline being reinforced and repaired from time to time at such crossings, and it was for the purpose of determining who was liable for such reinforcing and repairing that the action was brought.

The complaint alleged in substance the foregoing facts, and alleged further the resulting flow of traffic over and across said pipeline from North Central Avenue into said Darrah, Sequoia and Hollister Streets and in passing from said last mentioned three streets into North Central Avenue and that unless the pipeline at such points were repaired and reinforced, water would leak from said pipeline at the places where the crossing traffic damaged the same, and flood the surrounding territory and do great damage.

The answer of defendant city of Ceres, in addition to denying most of the complaint, defended affirmatively with the allegation that no claim had been presented to the city nor any demand made upon it by plaintiff. The answer of

defendants Richard and Lois Fair, consisting of an almost general denial, affirmatively alleged that any flood damage to surrounding territory would be due to plaintiff's negligent construction and maintenance of the pipeline; the element of the foreseeability of the growth and expansion of the city of Ceres was introduced by the Fairs' affirmative allegation that plaintiff negligently constructed and installed the pipeline in 1938 when it permitted it to be placed alongside a public highway, without making it sufficiently sturdy so as to accommodate traffic then existing and to be expected from subdivisions reasonably to be anticipated because of the then steadily increasing population and prosperity of the area.

Following a trial the court found in substance as follows: That the improvement district had never received conveyance of fee title, right of way or easement of the land upon which the pipeline is situated, but that by use thereof, the district had acquired an easement to maintain the pipeline; however, except for this limited easement, the property owners along or adjacent to the pipeline had not given up any rights to their property, but retained full rights thereto, including the right to construct streets and alleys across the pipeline and to subdivide for residential purposes, the said owners being liable only for such damage as they might do to the pipeline wilfully or negligently by removing dirt therefrom or otherwise injuring it. The defendants Fair were found to have not removed earth from above the pipeline nor to have contributed in any manner to the damage thereof. It was also found that: Unless the pipeline be properly maintained and repaired, water is likely to leak therefrom and thereby cause damage to adjoining landowners; that the pipeline had not been properly maintained in the past, with leakage occurring therefrom. The court also found that in 1936, plaintiff knew that the county and the community about Ceres was growing, with circumstances indicating that new subdivisions would be opened and that the population and traffic in the area where the pipeline is located would increase, so that they were obliged to construct the pipeline so as to be safe for such increasing traffic; if this original construction was inadequate, plaintiff is responsible for making whatever repairs may be necessary to keep the pipeline safe for the traveling public to pass over it from regularly established roads or alleys, and no obligation of maintenance or repair of the pipeline rests upon the defendants. The court further found that no claim had been presented to or demand made upon the city of Ceres.

Judgment was entered in accordance with said findings, paragraphs 3 and 4 of said judgment reading as follows:

"3. That the defendants, Richard Fair and Lois Fair, his wife, and the defendant, City of Ceres, are not in any way liable to the plaintiff for maintaining the pipeline referred to herein, or for replacing or reinforcing the same, and are not liable to the plaintiff for any damage claimed by plaintiff, and that the said Richard Fair and Lois Fair, and the City of Ceres, have a right to maintain the alleys and streets in the subdivision known as Sequoia Tract.

"4. That the owners of real property adjoining said pipeline, the defendants herein, are liable and will be liable for damages to the plaintiff for willfully or negligently removing dirt from the pipeline resulting in damage thereto, or in any other way willfully or negligently causing damage or injury to the said pipeline, but will not be liable otherwise."

Plaintiff has appealed from the judgment and defendant city of Ceres has appealed from that portion of the judgment declaring that plaintiff had a 10-foot easement for maintenance of the pipeline. Defendants Richard Fair and Lois Fair have also appealed from the same portion of the judgment but have filed no brief in support of their said appeal, so it is apparent that they have abandoned their appeal.

Plaintiff makes a number of contentions in attacking the judgment but these contentions are summarized in the following quotation from plaintiff's closing brief:

"It would seem to us to be only a common, ordinary sense of right and justice, that when one public agency has a right of way over certain land for conducting water, that any other right of way acquired thereafter by another public agency would be subject to a first easement, and that the owner of the second easement would have to exercise its easement in such manner that it would not interfere with the first easement. In other words, applying it to the case at bar, the Improvement District 14-A had an easement for its pipeline and continuously used the same to the present time. Later, the City of Ceres acquired rights of way for streets for public travel across the pipeline, and we submit that it is obliged to exercise those rights in such a way as not to interfere with the use of the easement belonging to the district for conducting water through the pipeline. Whenever the streets are constructed across the pipeline so that the flow of traffic thereon would injure the pipeline, it would naturally be incumbent upon the

City to so reinforce and reconstruct, if necessary, the portion of the pipeline under the street that the traffic would not injure the pipeline at the crossing, because any injury to the pipeline is an interference with the use by the Improvement District of its easement. This action was brought to have it determined whether the plaintiff or the City of Ceres is bound to keep the pipeline in repair and in a safe condition at the crossings so that it will not become damaged, interfering with plaintiff's use of the pipeline and endangering the general public and likely subjecting to damages parties who are bound to keep the pipeline in repair at such crossings.''

It is clear from the record that the open ditch which preceded the pipeline was constructed more than 50 years prior to the commencement of the instant action and that after Improvement District No. 14-A was organized in 1938, the open ditch was replaced by a pipeline in the same location. Under the facts appearing in the record there can be no doubt that the finding of the court that Improvement District No. 14-A is the owner of an easement for the maintenance of its present pipeline is fully supported. For as was said in *Pacific Gas & Electric Co.* v. *Crockett L. & C. Co.,* 70 Cal.App. 283, at page 291 [233 P. 370]:

''Accordingly, it has been held in this state that where an open and uninterrupted use of easement for a sufficient length of time to create the presumption of a grant is shown the law will presume the elements of hostile intent and that the use is adverse and under a claim of right (*Franz* v. *Mendonca,* 131 Cal. 205 [63 P. 361]; *Fleming* v. *Howard,* 150 Cal. 28 [87 P. 908]; *Clarke* v. *Clarke,* 133 Cal. 667 [66 P. 10].) If the other party relies upon the fact that these acts were permissive or in the nature of a license, or merely given as a matter of accommodation, it is incumbent upon him to rebut the presumption of a nonappearing grant. Otherwise the presumption stands as sufficient proof and establishes the right.''

And in *Chapman* v. *Sky L'Onda Mut. Water Co.,* 69 Cal. App.2d 667, the court said at page 678 [159 P.2d 988]:

''Moreover, it is the law that, when one who claims an easement by prescription offers satisfactory evidence that all the required elements existed, the burden of showing that the use was merely permissive shifts to the owner of the land. (*Matthiessen* v. *Grand,* 92 Cal.App. 504 [268 P. 675].) Where the claimant shows exclusive, open and notorious possession, and acts evidencing domination and control throughout the statutory period, the inference arises that the use was adverse and

under a claim of right. The rule was clearly stated in *Wallace v. Whitmore,* 47 Cal.App.2d 369, 372 [117 P.2d 926], as follows: 'But clear and satisfactory evidence of the use of the road in that manner creates a *prima facie* title to the easement by prescription. Such evidence raises a presumption that the road is used with an adverse claim of right to do so, and in the absence of evidence of mere permissive use of the road, it will be sufficient upon which to sustain a judgment quieting title to the easement therein.' ''

Also see Jones on Easements, section 186.

We agree with the contention of plaintiff that the district having a right of way for its pipeline, the rights of defendants would be subject to said easement, and that defendants have no right to interfere with plaintiff's easement. Therefore, when the defendant city of Ceres accepted the subdivision maps and the streets designated thereon, it had a right to establish streets to cross said pipeline, but it was obligated and required to construct and maintain said crossings in such a manner that no damage would result to said pipeline from the use of said streets or alleys. This being so, the said defendant city of Ceres was and is charged with the duty of so constructing and reinforcing said crossings that the use by plaintiff of its easement for its pipeline would not be interfered with and that no damage would result to said pipeline from traffic passing over it. If said defendant failed to do this it would be liable for any damage resulting to plaintiff by reason of said failure, but we do not believe that defendant should be required or permitted to make the actual repairs to the pipeline as the operation and repair thereof should be exclusively under the control of plaintiff, although said defendant is and shall be liable for the cost of any repairs made necessary by its failure to properly construct and maintain said crossings.

In 4 California Jurisprudence 527, after discussing and quoting law which provided for the construction of ditches across public highways which are already in existence, it is stated:

''However, the above provisions of the code have no application to make it the duty of a person to construct bridges on highways established after the construction of the canal. Hence, where a municipality lays out or establishes a street or highway which crosses a canal or ditch previously constructed by its owner, the duty of erecting the necessary bridge at

such crossing devolves upon the municipality and not upon the owner of the canal or ditch.''

And in *City of Madera* v. *Madera Canal & Irr. Co.*, 159 Cal. 749, the court said at page 755 [115 P. 936] :

''Reading all these sections together, we think the respondent is right in its contention that the legislature did not intend to impose upon the owners of ditches or other artificial conduits of water the duty of bridging the same whenever the ' public, after the construction of the canal, ditch, or other conduit, should undertake to lay out a new road across the water conduit.''

In *South Yuba Water Co.* v. *City of Auburn*, 16 Cal.App. 775, this court said at page 779 [118 P. 101] :

''When this case was first under submission there was a question, not then finally determined, whether canal owners were required to build and maintain bridges over their ditches or canals at crossings of highways laid out and established after the construction of such ditches or canals. The point has been before the supreme court in a recent case—*City of Madera* v. *Madera Canal & Irr. Co.*, 159 Cal. 749 [115 P. 936]. The question was thoroughly considered and the court held that where municipalities lay out or establish a street or highway which crosses a canal or ditch previously constructed by its owner, the duty of erecting the necessary bridge at such crossing devolves upon the municipality, and that section 551 of the Civil Code imposes no duty on the owner of the canal or ditch to construct the crossing. This case seems to be decisive of the point on which appellant relies and adversely to its contention.''

And in *Galiano* v. *Pacific Gas & Electric Co.*, 20 Cal.App.2d 534, this court, after referring to the foregoing cases, said at page 544 [67 P.2d 388] :

''As to the duty of the authority constructing the highway over the waterways or canals subsequent to the construction of the canal or waterway to maintain the highway in a safe condition, a number of additional cases might be cited, but those to which we have referred appear to us to be conclusive.''

We conclude, therefore, that plaintiff was entitled to a judgment declaring that it was the duty of the defendant city of Ceres to maintain, construct and reinforce the crossings over said pipeline in such a manner that no damage shall

result to said pipeline from traffic passing over said pipeline, and that defendant city of Ceres is and shall be liable for any damage to said pipeline caused by its failure to do so. The trial court was in error in concluding that the defendant city of Ceres had no such obligation or liability. If plaintiff's easement consisted of an open ditch instead of a pipeline, there can be no doubt that defendant city of Ceres would be required to construct its crossings over the ditch in such a manner that it would not be damaged or the flow of water through said ditch interfered with. The fact that the easement has been changed from an open ditch to a pipeline does not change or lessen the obligation of said defendant.

The cross-appeal of defendant city of Ceres attacking the portion of the judgment declaring plaintiff to have an easement for the maintenance of the pipeline is without merit. Said defendant argues that right by adverse user was not shown, that there was no evidence of payment of taxes, and further that the use was permissive and hence the element of hostile possession was lacking. ■ So far as the point as to nonpayment of taxes is concerned, the burden is, of course, on the party contesting title by adverse possession to show that taxes have been assessed on the easement and that claimant has not paid them. (*Redemeyer* v. *Carroll*, 21 Cal. App.2d 217 [68 P.2d 739] ; *McMorris* v. *Pagano*, 63 Cal.App. 2d 446 [146 P.2d 944].) No such showing was here made. We have already pointed out that the finding that plaintiff is the owner of an easement for its present pipeline is amply supported by the record.

No other points raised require discussion.

The judgment is reversed with directions to the trial court to enter, a judgment declaring the rights of the parties in accordance with the views herein expressed.

Van Dyke, P. J., and Peek, J., concurred.